JAMES LYONS, for the use of the Farmers' Bank of Virginia
v. MINOR KENNER.

Where, after a protracted illness, a disease, which existed at the time of the sale, assumes a new and different character, and finally causes the death of a slave, there may be reason to doubt the vendee's right to recover in a redhibitory action. *Aliter*, where the evidence proves that the death was the consequence of the original disease.

Defendant having purchased a lot of negroes, in other respects sound, on placing them in the railway cars to be transported to his plantation, a distance of sixteen miles, discovered in one of them the first symptoms of the measles. The one thus affected was not separated from the rest, either in the cars or on his plantation, and no physician was sent for until four days had elapsed, when another was found ill of the same disease. Both of these, and two others, died of the disease. In an action by the vendor for the price : *Held*, that the measles is not an incurable malady ; that defendant, by neglecting to separate the sick girl from the other slaves after notice of the disease, and by omitting to call in medical aid at once, failed to act as a man of ordinary prudence would have done ; and that the presumption created by sect. 3 of the act of 2 January, 1834, as to slaves who have been less than eight months in the state, that any redhibitory malady which displays itself within fifteen days after the sale, existed on the day thereof, does not apply to such a case.

To recover in a redhibitory action, a purchaser must show that he acted with, at least, ordinary care and attention, and that no act or omission of his can have occasioned the loss he attempts to throw upon his vendor.

APPEAL from. the District Court of the First District, *Buchanan*, J.

*I. W. Smith*, for the plaintiff, cited *St. Romes* v. *Pore*, 10

Mart. 30.  *Serapurn* v. *Bousquet*, 15 La. 509.  *Price* v. *Barr*, 6 Littell Rep. 216.  Wheeler on Slavery, 127.

No counsel appeared for the appellant.

MORPHY, J.  This suit is brought on a promissory note of $7933 33⅓.  The defendant admits his signature, but avers that the note was given in part payment for certain negroes lately introduced into the state, which negroes were sold to him under a full warranty against all redhibitory vices and maladies; that at the time of the sale, a number of said slaves were affected with an incurable disease called the measles, of which several died, to wit, *Isaac*, *Preston*, *Martha Ann*, and *Reuben Cooper*, although every care and attention which medical skill could render, was bestowed on them; that these four slaves were together of the value of $1900, and that expenses were incurred for medical attendance on these and the other negroes diseased, to the amount of $500.  The defendant further avers, that at the time he purchased these slaves and carried them to his plantation, he had thereon a number of other slaves; that the disease, with which the slaves bought of plaintiff were afflicted, being of a contagious nature, many of his other negroes caught the infection; that some died and others were sick for a length of time, and that by the loss of negroes, the trouble, and expense, and the loss of labor during their illness, he has suffered damages to the amount of $3000.  The answer concludes with a reconventional demand for the sum of $5400.

The judge of the Inferior Court was of opinion that the slaves did not die of the measles, but of other diseases not alleged to have existed at the time of the sale.  We cannot consider as diseases distinct and different from the measles, the affections of the lungs, bowels, brain, &c., which in the opinion of the physician who attended on these slaves, were occasioned by that malady, and in consequence of which they died.  The judge says that by describing these morbid affections as the consequences of the measles, the witness shows them to have been something distinct from the measles itself.  It appears to us more reasonable to infer from his expressions, that the complaints which caused the death of these four slaves, were effects, or rather modifications of the disease called the measles, which in its progress is known to set-

tle on various parts of the system. If after a protracted illness, a disease existing at the time of the sale, should assume a new and different character, and finally cause the death of a slave, there would be reason to doubt a purchaser's right to recover, because the proximate and not the remote cause of the death is perhaps to be considered; but in this case the physician declares positively that these slaves died in consequence of the measles— two of them within a fortnight after being taken sick, and the other two about six weeks afterwards. We have come, however, to the same conclusion as the court *a qua*, but upon another ground. The testimony shows, that the slaves sold to the defendant appeared, before and at the time of the sale, to be sound, healthy, and free from any disease. They had been found so by defendant's own physician, who visited them, although not, as he says, with the view of examining whether they were sound or not. On the day after the sale, when, at the defendant's request, they were taken to the *depôt* of the Carrolton Rail Road to be transported to his plantation, one of the lot, a young girl named Martha Ann, complained of pain in her head and back, and had some fever, and a running from the eyes, which are described by the physicians as the first symptoms of the measles. Of this, a witness who had charge of the negroes informed the defendant, who nevertheless had her sent up in the cars, together with the other negroes, a distance of several miles. It has not been shown that on reaching the plantation, she was kept apart from the other negroes; and a physician was only called in to see her four days afterwards. If, during this time, the sick girl associated with the negroes, as seems to have been the case, it would have been a matter of surprise, had the disease, which is said to be of the most contagious nature, not spread among them. When the physician was called in, he found the girl, Martha Ann, and the negro, Isaac, sick with the measles, and he tells us that a great number of the other negroes caught the disease within fifteen days after the sale. The defendant invokes the presumption, created by section 3 of the statute of 1834, as to slaves recently introduced into the state, that if any redhibitory maladies, bodily or mental, display themselves within fifteen days after the sale, they shall be presumed to have existed on the day thereof. This

presumption appears to us to have been considerably weakened, if not entirely destroyed, by the circumstances of this case. Had the defendant shown, that upon being warned of the appearance of the disease in the girl Martha Ann, he had taken the precaution of immediately separating her from the other slaves, he might have entitled himself to the benefit of the presumption he calls to his aid ; but not having made any such proof, and the plaintiff having shown that the slaves were sound and healthy at the time of the sale, we do not think that he can avail himself of it. From the testimony, the measles cannot be considered as an incurable malady. One of the physicians describes it as a very manageable disease, which may be easily cured if promptly attended to, unless connected with some other malady, or unless some imprudence be committed by exposure or diet. The prompt and fatal termination of the disease may be owing to some of the latter causes. It appears to us that after the warning he had received, the defendant did not act as a man of ordinary prudence would have done. Had he separated Martha Ann from the other negroes, and procured medical aid for her immediately, she might have recovered, and none of the other slaves have caught the disease. A purchaser, in order to recover in a redhibitory action, must show that he acted with, at least, ordinary care and attention, and that no act or omission on his part can have occasioned the loss which he attempts to throw upon the seller, especially when, as in the present case, the slaves sold are proved to have been apparently sound at the time of the sale, and a rigorous presumption of law is resorted to, to show that they were unsound at that time.

*Judgment affirmed.*